UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    CASE No. 1:07-cr-233

    HON. ROBERT J. JONKER

CRAIG ALLEN INGRAM,

    Defendant.
_____/

# OPINION REGARDING DEFENDANT INGRAM'S FIRST STEP ACT MOTION

## INTRODUCTION

Defendant Ingram pleaded guilty to a Section 841(b)(1)(A) drug offense involving at least 50 grams of crack cocaine in May 2008. The Final Presentence Report completed by the probation office determined Defendant Ingram was responsible for a quantity of narcotics—including 1.336 kilograms of crack cocaine—that was equivalent to over 26,000 kilograms of marijuana. This was sufficient at the time to trigger a sentencing range of 10 years to life imprisonment under 21 U.S.C. § 841(b), as well as to trigger a base offense level of 34. On October 10, 2008, Judge Bell sentenced Defendant Ingram to 240 months imprisonment, a downward variance from the guideline range. Defendant Ingram was 28 years old at the time.

The matter before the Court is Defendant Ingram's motions for modification or reduction in sentence under the newly enacted First Step Act. (ECF Nos. 121, 123, and 124). The Court appointed counsel to assist Defendant Ingram with his motion, and both sides have filed briefs. The government responds that Defendant Ingram is not eligible for consideration because the quantity of crack cocaine the PSR attributed to Defendant's conduct is more than enough, even

after subsequent statutory changes, to activate the original statutory penalty range that applied to Defendant. The government further contends that even if the Court finds Defendant Ingram eligible, Defendant Ingram has already received a below-guideline sentence and so no further reduction is called for. (ECF No. 59).

The defense replies by averring that Defendant is eligible for a reduced sentence and requests the Court award a comparable variance under the newly calculated guidelines. Defendant also challenges the quantity of narcotics that he was found responsible for as well as his career offender status. The government opposes any plenary proceeding.

The Court sees no need for a hearing on the fully briefed issues. Defendant Ingram is eligible for relief under the First Step Act, but the Court does not believe a plenary resentencing is necessary or proper. This means, among other things, that while the Court may consider these arguments in making its discretionary call, the First Step Act does not provide an avenue for Defendant to challenge his career offender status or the quantity of narcotics that was attributed to him. That said, the Court discerns a number of considerations that justify a reduced sentence under the First Step Act in this case. The Court can and does exercise its discretion under the First Step Act to reduce Defendant Ingram's sentence as provided in this Opinion and accompanying Order.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Offense Conduct*

In June 2006 a confidential informant (CI) told a detective with the Traverse Narcotics Team (TNT) of the Michigan State Police that Defendant Ingram had been selling crack cocaine to the informant for the past few months. In the following weeks and months, TNT members conducted an investigation that included controlled buys, interviews, and the execution of search warrants. Ultimately Defendant Ingram and his co-defendant were indicted on September 27,

2007 with conspiracy to distribute more than 50 grams of cocaine base ("crack cocaine") in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A)(iii). (ECF No. 1). Defendant Ingram was arrested on October 3, 2007.

### 2. *Plea*

On May 16, 2008, Defendant Ingram pleaded guilty before the Honorable Robert Holmes Bell to Count 1 of the Indictment under the terms of a written plea agreement. (ECF Nos. 34 and 38). As part of the agreement, Defendant Ingram admitted that he was responsible for more than 50 grams of crack cocaine in relation to the charged conspiracy. (ECF No. 34, PageID.292). This triggered a mandatory minimum term of 10 years in prison. In exchange for his plea, the government agreed not to file a notice of sentence enhancement under 21 U.S.C. § 851 that would have increased the mandatory minimum penalties applicable to Defendant.

### 3. *PSR & Sentencing*

The PSR calculated an initial offense level of 34 under U.S.S.G. § 2D1.1 based on the quantity of narcotics attributable to Defendant's criminal activity.[1] (PSR ¶ 60). The officer then added two levels for possession of a dangerous weapon (PSR ¶ 61) and four levels for Defendant Ingram's role as a leader in the offense (PSR ¶ 63). Three levels were then deducted for Defendant Ingram's acceptance of responsibility. (PSR ¶¶ 66 and 67). The resulting total offense level was 37. (PSR ¶ 68). Defendant Ingram's career offender status then elevated his criminal history category from IV to VI. (PSR ¶¶ 84-85). On the chart, this resulted in a guideline range of 360 months to life imprisonment. (PSR ¶ 114).

---

[1] The total quantity attributable to Defendant Ingram as found by the PSR was 1.336 kilograms of crack cocaine, 606.03 grams of powder cocaine, and 207.4 grams of marijuana. Under the 2008 version of the guidelines, this amounted to 26,841.6634 kilograms of marijuana equivalent. (PSR ¶¶ 52, 60).

3

At the October 10, 2008 sentencing, Judge Bell adopted the PSR in all respects except that the court reduced Defendant's leadership role enhancement from four levels to three. (ECF No. 80, PageID.448). The resulting guideline range was 324 to 405 months based on a Total Offense Level of 36 and Criminal History Category of VI. The court then granted a downward variance and imposed a sentence of 240 months imprisonment to be followed by 5 years of supervised release. (ECF No. 55). Defendant did not appeal his conviction or sentence.

### 4. *Post Sentencing Matters*

Defendant Ingram has since twice sought to modify or reduce his sentence under the intervening Guideline Amendments. The first motion, dated March 19, 2012, requested a retroactive application of Guideline Amendment 750 to his sentence under 18 U.S.C. § 3582(c)(2). (ECF No. 64). Judge Bell denied the motion on December 5, 2012, noting that the new calculation did not result in a lower guideline range. (ECF No. 77). The Court of Appeals affirmed the court's decision. *United States v. Ingram*, No. 12-2625 (6th Cir. Sep. 9, 2013). Then, on November 17, 2014, Defendant Ingram again sought to reduce his sentence under 18 U.S.C. § 3582(c)(2), this time citing Guideline Amendment 782. (ECF No. 83). A sentence modification report determined that the newly calculated guideline range was 262 to 327 months. (ECF No. 109). Because this amended range was still above Defendant's original sentence of 240 months imprisonment, Defendant Ingram was not, at that time, eligible for any relief under the terms of 18 U.S.C. § 3582(c)(2). *See United States v. Washington*, 584 F.3d 693, 701 (6th Cir. 2009).

According to the BOP, Defendant Ingram is currently scheduled to be released from imprisonment on May 11, 2026.

## 5. The Fair Sentencing Act of 2010

A little less than two years after Defendant Ingram was sentenced, Congress passed the Fair Sentencing Act of 2010, Pub L. No. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act reduced the sentencing disparity between crack and powder cocaine offenses by increasing the amount of crack cocaine needed to trigger the mandatory minimums established in the Anti-Drug Abuse Act of 1986. *United States v. Blewett*, 746 F.3d 647, 649 (6th Cir. 2013) (en banc); *see also Dorsey v. United States*, 567 U.S. 260, 263-64 (2012). More specifically, the Fair Sentencing Act increased the threshold quantity in 21 U.S.C. § 851(b)(1)(A)(iii) from 50 grams or more of crack cocaine to 280 grams or more. Fair Sentencing Act at § 2(a)(1). The Fair Sentencing Act also increased the threshold quantity in 21 U.S.C. § 841(b)(1)(B)(iii) from 5 grams or more of crack cocaine to 28 grams or more. Fair Sentencing Act at § 2(a)(2). Under the Fair Sentencing Act, therefore, in order to trigger the ten years to life sentencing range of Section 841(b)(1)(A)(iii), the offense would have to involve more than 280 grams of crack cocaine.

The changes made by the Fair Sentencing Act, however, were not retroactive. *Blewett*, 746 F.3d at 650.[2] Because Defendant Ingram had been convicted and sentenced before the Fair Sentencing Act's enactment he was not, at that time, eligible for any relief.

## 6. The First Step Act of 2018

On December 21, 2018, President Trump signed the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (the "First Step Act") into law. The First Step Act "modified prior sentencing law and expanded vocational training, early-release programs, and other programming

---

[2] In *Dorsey v. United* States, 567 U.S. 260 (2012), the Supreme Court determined that the Fair Sentencing Act applied to any defendant sentenced on or after August 3, 2010, regardless of when the offense occurred. Because Defendant Ingram was sentenced before August 3, 2010, *Dorsey* did not provide him with a pathway to any relief.

5

designed to reduce recidivism." *United States v. Simmons*, 375 F. Supp. 3d 379, 385 (E.D.N.Y. 2019). In Section 404 of the First Step Act, Congress made the Fair Sentencing Act's statutory changes for crack cocaine offenses retroactive to defendants who were sentenced before August 3, 2010:

> SEC. 404. APPLICATION OF FAIR SENTENCING ACT.
>
> (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.
>
> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.
>
> (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act of 2018, Pub. L. No. 115-319, § 404, 132 Stat. 5194 (2018).

Accordingly, defendants who were convicted before August 3, 2010 of a crack cocaine offense for which the Fair Sentencing Act reduced their statutory penalties are now eligible for consideration of a reduced sentence. First Step Act of 2018, Pub. L. No. 115-319, § 404(a), (b),

132 Stat. 5194 (2018). Whether to reduce the sentence of an eligible defendant is left to the sentencing court's discretion. *Id.* at § 404(c). No reduction is required.

## DISCUSSION

### 1. *Summary of the Court's Process*

In an earlier Order, this Court set out a two-step process for evaluating First Step Act motions. *See United States v. Boulding*, 379 F. Supp. 3d 646 (W.D. Mich. 2019). The first step is determining eligibility. In *Boulding* the Court concluded that "eligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act." *Id.* at 651. As applied to that case, this determination meant that the quantity of narcotics (whether admitted, found by a jury, or found by a court) did not factor into the question of eligibility. That is true here as well, but this case also presents issues relating to a defendant's career offender status and changes (or not) to the guideline range. Based on the Court's approach in *Boulding*, these questions do not affect the categorical eligibility determination. They simply inform the Court's discretionary call at the second step.

At that second step, a reviewing court evaluates the motion to determine whether it should exercise its discretion to reduce the eligible defendant's sentence. This calls for a determination of the scope of the relief available. Here the Court previously determined, and reaffirms here, that the First Step Act does not provide for a plenary resentencing. *Id.* at 653; *see also United States v. Davis*, No. 07-CR-245S (1), 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019) (concluding the First Step Act does not provide for a plenary resentencing and that the defendant need not be present for a reduction in sentence); *United States v. Jones*, No. 2:05-CR-29-FL-1, 2019 WL 2480113, at *2 (E.D.N.C. June 11, 2019) (noting that under 18 U.S.C. § 3582(c) a court may not

modify a term of imprisonment except for a narrow range of situations, including "to the extent otherwise expressly permitted by statute," 18 U.S.C. § 3582(c)(1)(B) and holding that "[t]he First Step Act permits the court to impose a 'reduced sentence' and 'modify' the term of imprisonment under § 3582(c)(1)(B), but it does not 'expressly permit' full resentencing."). But as the Court has also remarked, "unlike earlier rounds of retroactive crack or other drug sentencing relief, the First Step Act does not impose any artificial or guideline limits on a reviewing court. These earlier rounds of retroactive reduction proceeded under 18 U.S.C. § 3582(c)(2) based on Sentencing Commission guideline reductions and were therefore subject to the limitations built into that section. The First Step Act is different. The Sentencing Commission has nothing to do with it." *Boulding*, 379 F. Supp. 3d at 653. This means, among other things, that career offenders like Defendant Ingram who did not previously receive relief under the retroactive amendments may now be able to receive a reduced sentence, if the court exercises its discretion to do so. At this point the Court considers whether to reduce a sentence by looking at the factors set out in Section 3553(a), the revised statutory range under the Fair Sentencing Act, any amendments to the guideline range, and post-sentencing conduct. *Jones*, 2019 WL 248-113, at *2.

### 2. *Defendant Ingram is Eligible for a Reduced Sentence*

At the first step, the Court concludes Defendant Ingram is eligible for consideration of a reduced sentence under the First Step Act. Defendant Ingram's offense was committed before the Fair Sentencing Act's enactment on August 3, 2010; he was further convicted under the enhanced penalties found in Sections 841(b)(1)(A)(iii); and those penalties were "modified by section 2 . . . of the Fair Sentencing Act of 2010[.]" He was, accordingly, convicted of a "covered offense."

The categorical limitations in Section 404(c) also do not apply to Defendant Ingram. His sentence was not "previously imposed or previously reduced in accordance" with the amendments

made by sections 2 and 3 of the Fair Sentencing Act. And he has not previously moved to reduce his sentence under Section 404 of the First Step Act. Accordingly, the Court concludes that Defendant is eligible under Section 404(a) for a reduced sentence under Section 404(b).

The government asserts Defendant Ingram is not eligible because the quantity of narcotics he is responsible for—which includes 1.336 kilograms of crack cocaine—still exceeds the 280 grams of crack cocaine now necessary to trigger the original penalty range. As noted above, the Court has declined to adopt this approach, as have many other courts. *See* Andy Sullivan, *As New U.S. Law Frees Inmates, Prosecutors Seek to Lock Some Back Up*, Reuters (July 23, 2019, 6:07 AM), https://www.reuters.com/article/us-usa-crime-firststep-insight/as-new-u-s-law-frees-inmates-prosecutors-seek-to-lock-some-back-up-idUSKCN1UI132 (noting 73 of 81 reviewed cases have declined to adopt government argument that reviewing courts "should base their decision on the total amount of drugs that were found to be involved during the investigation, rather than the often smaller or more vague amount laid out in the law [the defendant] violated years ago."). The Court is satisfied that Defendant Ingram qualifies as an eligible individual under the First Step Act.

   3. *Scope of Relief*

      a. *Guideline Comparison*

At the second step, the Court considers the scope of relief available to Defendant Ingram and then proceeds to determine by how much, if any, it should reduce the Defendant's sentence. The Court begins with a guideline range comparison. The table below demonstrates the differences between the offense level calculation as to Defendant's crack cocaine conviction as it existed when Defendant Ingram was originally sentenced in 2008 and the guidelines as they exist

now, taking into account all intervening drug guideline amendments and the retroactive application of the Fair Sentencing Act.

| Count 1 | Original Sentence | First Step Act |
|---|---|---|
| Base Offense Level<br><br>*1.336 KG crack cocaine*<br>*606.03 G cocaine*<br>*207.4 G marijuana* | Level 34 (§ 2D1.1(c)(2) and commentary)) (2008)<br><br>*At least 10,000 KG but less than 30,0000 KG of Marijuana*<br><br>*26,841.6634 KG marijuana equivalent* | Level 32 (§ 2D1.1(c)(5)) (2018)<br><br>*At least 3,000 KG but less than 10,000 KG of Converted Drug Weight.*<br><br>*4,892.27 kilograms of converted drug weight.* |
| Special Offense Characteristic | +2 levels (§ 2D1.1(b)(1))<br><br>*Possession of a dangerous weapon* | +2 levels (§ 2D1.1(b)(1))<br><br>*Possession of a dangerous weapon* |
| Adjustments for Role in Offense<br><br>*manager or supervisor* | +3 levels (§ 3B1.1(b)) | +3 levels (§ 3B1.1(b)) |
| Adjustments for Acceptance of Responsibility | -3 levels (§ 3E1.1(a) & (b)) | -3 levels (§ 3E1.1(a) & (b)) |
| Total Drug Offense Level (After Acceptance) | Level 36 | Level 34 |
| Statutory Penalty<br><br>*Based on charge of more than 50 grams of crack cocaine* | 10 years to Life<br><br>*Section 841(b)(1)(A)(iii)* | 5 years to 40 years<br><br>*Section 841(b)(1)(B)(iii)* |
| Chapter Four Enhancement (After Acceptance) | Level 34 (§ 4B1.1(b)(A)) (2008)<br><br>*Maximum Life Penalty* | Level 31 (§ 4B1.1(b)(2)) (2018)<br><br>*Maximum Forty Year* |
| **Total Offense Level** | Level 36 | Level 34 |
| **Criminal History w/out Career Offender Enhancement** | Category IV | Category IV |
| **Guideline Range Before Consideration of Career Offender Status** | 262 to 327 months on the chart | 210 to 262 months on the chart |
| **Criminal History with Career Offender Enhancement** | Category VI | Category VI |

| **Guideline Range After Consideration of Career Offender Status & Statutory Provisions** | 324 to 405 months on the chart | 262 to 327 months on the chart |
|---|---|---|

As the above chart demonstrates, Defendant Ingram's guideline range has not been reduced below the variance that the sentencing court originally imposed. This is because his sentence continues to be driven by a significant quantity of narcotics and Defendant's career offender status. The guidelines then, as they are now, are also well within the applicable statutory penalty range.

### b. *Discretionary Call*

After its review of the record, including Defendant Ingram's post-sentencing behavior, the Court elects to exercise its discretion to reduce Defendant Ingram's sentence under the First Step Act. In evaluating the extent of the reduction, the Court considers the guideline analysis as well as the factors set forth in § 3553(a). To be sure, Defendant's existing sentence is below the amended guideline range. This does not disqualify Defendant from a further reduction, in the Court's discretion. The original sentencing judge found a basis in these factors for a variance, and so does this Court. Simply applying the same percentage variance to the amended guideline range of 262 to 327 months would suggest a new sentence of 194 months. The Court believes there are additional variance factors as well. The Court exercises its discretion to reduce Defendant's sentence to 180 months of custody.

The Court discerns several reasons for imposing a reduced sentence under the First Step Act, as did the original sentencing judge. The Court further notes that even though the guidelines accounting for Defendant's career offender status are still above his original sentence, the gap between these guidelines and the actual sentence is much smaller. The Court is not revisiting Defendant's career offender determination, but it observes Defendant earned this designation when

he was merely twenty-eight years old.[3] The career offender predicates did not involve significant drug quantities. Moreover, despite the leadership enhancement, the dealing in the case did not appear especially well organized. Defendant also has a long-term substance abuse history, and a very limited educational background. And all things considered, the Court is satisfied in this case that Defendant Ingram's post-sentencing conduct has demonstrated a strong desire to address the root cause of his offense behavior here and in his criminal history more generally. While he has incurred some disciplinary infractions, he has also completed programs focused on drug abuse. He has, furthermore, completed programs of academic and professional study. Defendant has been in custody for a lengthy period of time already—approximately 148 months—and will still have more time in custody and five years of supervision to see whether he can apply the lessons he has learned in a community setting.

This reduced sentence reflects the purposes of sentencing, including the seriousness of the offense, deterrence to others, protecting the public, respect for the law, and providing rehabilitative opportunities. It also balances the competing considerations implicated by guideline changes and intervening legal changes.

## CONCLUSION

Defendant Ingram's pro se motions for modification or reduction of sentence under the First Step Act (ECF No. 121, 123, and 124) are granted to the extent detailed in this Opinion, and

---

[3] The Court does not believe the First Step Act permits an avenue to challenge either quantity (as Defendant does in his pro se submissions) or his career offender status (as defendant through counsel does in the supplemental brief). The First Step Act does not require a reviewing Court to hold a plenary resentencing. Several other courts across the circuits have concluded the same. *See United States v. Mason*, No. 2:04-cr-00209-RHW-1, 2019 WL 2396568, at *6 (E.D. Wash. June 6, 2019) (collecting cases). This does not mean, however, that the Court may not consider these arguments in making its discretionary call.

his term of imprisonment reduced to a total term of 180 months imprisonment. All other terms of the original sentence, including the five-year term of supervised release, remains unchanged.

A separate Order consistent with this Opinion shall issue.


Dated:   September 27, 2019              /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        CHIEF UNITED STATES DISTRICT JUDGE